# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | CIVIL ACTION | |
| **Robert M. Champagne, III**, *et al.* | **No.** | **21-CV-476** |
| versus | **Section:** | **A** |
| **M/V UNCLE JOHN**, *et al.* | **Judge:** | **Zainey** |
| | **Magistrate Judge:** | **van Meerveld** |

**Opposition to
A & T Maritime Logistic's Motion for Summary Judgment
for Reimbursement of Defense Costs [R. Doc. 46]
Filed on Behalf of RLI Insurance Company**

RLI Insurance Company ["RLI"] opposes the Motion for Summary Judgment for Reimbursement of Defense Costs, R. Doc. 46, filed by A & T Maritime Logistics, LLC ["A&T"]. As a purely legal matter, A&T is not entitled to judgment in its favor, and, therefore, its motion should be denied.

## I   INTRODUCTION

Briefly stated, A&T improvidently argues[1] that it is entitled to interim reimbursements of its defense expenses based on non-Louisiana applications of the so-called "eight corner rule." First, there is no entitlement to interim reimbursement. Second, the eight corner rule does not apply to the policy at issue in this case.

As a reimbursement indemnity policy without a duty to defend, Louisiana law

---

[1] A&T's Memorandum in Support of its Motion for Partial Summary Judgment, R. Doc. 46-1, pp.2-3 & 6.

recognizes the need for a final adjudication of actual coverage, and not mere potential coverage.

With respect to the eight corner rule, it is a concept that applies to insurance policies that impose a duty to defend an insured based solely on matching the terms of an insurance policy to the allegations of the petition lodged against the insured.  This case, though, involves a reimbursement or indemnity policy that imposes no duty on the insurer to defend its insured.  Consequently, the eight corners rule does not apply, and A&T's request for interim reimbursements is inappropriate and must fail.

A&T also suggests that the only basis for denying coverage to A&T is the failure of A&T to abide the requirements of the Automatic Attachment Clause of the Policy.  A&T, while acknowledging the considerably broader scope of RLI's affirmative defenses, misconstrues the law by arguing that RLI must show prejudice due to A&T's failures to meet its sundry warranties and obligations.  That, too, must fail in the context of this marine insurance policy and A&T's warranties and other obligations to RLI.

## II   FACTUAL BACKGROUND

A&T chartered M/V UNCLE BLUE from defendant Alexis Marine on January 13, 2020.  On March 7, 2020, A&T claims that Alexis Marine agreed to substitute M/V UNCLE JOHN for M/V UNCLE BLUE, which had become disabled.  On March 10, 2020, M/V UNCLE JOHN and its tow is alleged to have allided with an embankment owned by Mildred Dampeer.  Robert M. Champagne and Elizabeth G. Champagne, plaintiffs, are believed to have acquired about 3.5 acres of land, including the allided bank of the Gulf Intracoastal Waterway, and, as they allege in their complaint, are the current owners of

all claims asserted by them in this action.  R. Doc. 1, ¶ 7.  Just shy of a year after the allision, plaintiffs filed suit against M/V Uncle John, A&T, and Alexis Marine.

At the time of the allision A&T had in effect a certain insurance policy issued by RLI providing specific Hull and Protection and Indemnity coverages within the terms and condition of the Policy.  The Policy's vessel schedule listed M/V Uncle Blue, but not M/V Uncle John. [R. Doc. 46-4, page 36].

Most facts are not in dispute as they are admitted in A&T's answer [R. Doc. 51] to RLI's counterclaim [R. Doc. 45].  They are as follows:

1.  RLI issued to A & T Maritime Logistics, LLC, RLI Policy No. HUL0200253, effective January 14, 2020, to January 14, 2020 ["RLI Policy"].

2.  The RLI Policy was cancelled at the request of A&T, as evidenced by Change Endorsement, bearing endorsement number 2 to the RLI Policy.

3.  Endorsement number 2 of the RLI Policy was effective April 23, 2020.

4.  The RLI Policy contains a "CLAIMS (GENERAL PROVISIONS)" section that provides as follows:

In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Underwriters…

["General Notice Provision"].

5.  The RLI Policy contains a "Prompt Notice Of Claim" section that provides as follows:

Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, processes, pleadings and

3

other legal papers or documents related to such occurrences.

["Prompt Notice Warranty"].

6.     The RLI Policy contains an AUTOMATIC ATTACHMENT CLAUSE that

provides as follows:

> This Policy is extended to cover automatically any additional Vessels acquired by the Assured by purchase or bareboat charter.  It is also extended to cover the interest of the Owners of any such Vessel if required by agreement between Assured and Owner.
>
> * * *
>
> The Assured agrees to report as soon as practicable such additional Vessel(s) and/or interests.  This insurance shall not be prejudiced by any unintentional delay or omission in making such reports, or any unintentional error in the value or description of vessel(s) to be reported, if prompt notice be given to the Company as soon as said delay or omission or error becomes known to the Assured and the premium shall be adjusted, as required.

["Automatic Attachment Clause"].

7.     The RLI Policy contains a NOTICE OF LOSS section that reads as follows:

> Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Company is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to this Company and/or the Agent or Broker of Record that arrange this insurance, as soon as practicable after receipt thereof, all communications processes, pleading and other legal papers or documents related to such occurrences.
>
> Within sixty (60) days after the loss, unless such time is extended in writing by this company, the insured shall render to this Company a proof of loss, signed and sworn by the Insured, stating knowledge and belief of the Insured as to the following: the time and origin of the loss, the interest of the Insured and of all other in the property, the actual cash value of each item and origin of the loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any said property, any changes in the title, use, occupation, location possession or exposures of said property since the issuing of this Policy, and if required and obtainable, verified plans and specifications of any vessel, equipment, fittings or machinery lost or damaged.  The Insured as often as may be reasonably required, shall exhibit to any person designated by this Company, all that remains of any property herein described, and submit to examinations under

oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for any person designated by this Company vouchers, or certified copies thereof if originals are lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

Whenever required by this Company, the Assured shall aid in securing information, evidence, and in obtaining of witnesses, and shall cooperate with this Company (except in a pecuniary way) in the defense of any claim or suit or in the appeal from any judgment, in respect of any occurrence as herein before provided.

["Notice of Loss Warranty"].

8.     The RLI Policy contains a Contractual Liability Extension, that provides as follows:

Subject otherwise to all the terms, conditions and limitations of the Policy, this Policy is extended to insure contractual liability of the Insured arising out of Hold Harmless and/or Indemnity Agreements contained in such contracts as have been or may be entered into by the Insured for furnishing of Insured Vessels' services and naming of such parties, their affiliates, and/or subsidiaries and/or interrelated companies as additional Assureds, their affiliates and/or subsidiaries and/or interrelated companies.  However, it is specifically understood and agreed that the naming of more than one Assured hereunder shall not increase the liability of this Company or otherwise alter any terms and/or conditions of this Policy.

* * *

It is further warranted that a copy of the Certificate of Insurance be submitted to the Company within thirty (30) days of the entering into the contract.

["Thirty-day Certificate Warranty"].

9.     M/V UNCLE BLUE was not involved in the allision.

Other facts are also undisputed, as they are affirmatively pleaded by A&T in its

cross-claim against RLI [R. Doc. 36].  They include the following:

10.    M/V UNCLE BLUE was the only scheduled vessel on the Policy.  Cross-claim ¶ 5.

Additional facts are undisputed:

11.    A&T provided no notice of its charter of M/V UNCLE JOHN to RLI prior to March

9, 2021, the date on which A&T, through its insurance agent, forwarded to RLI a copy of plaintiffs' complaint in this action.   R. Doc. 55-6; Declaration of Matthew Campen, ¶ 5.

12.   A&T provided no notice of the Allision to RLI prior to March 9, 2021, the date on which A&T forwarded to RLI a copy of plaintiffs' complaint in this action. Declaration of Matthew Campen, ¶ 8.

13.   A&T did not provide within sixty days of the allision, nor has it ever provided, a proof of loss, signed and sworn by A&T stating knowledge and belief of A&T as to the following: the time and origin of the loss, the interest of the Insured and of all other in the property, the actual cash value of each item and origin of the loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any said property, any changes in the title, use, occupation, location possession or exposures of said property since the issuing of the Policy, and if required and obtainable, verified plans and specifications of any vessel, equipment, fittings or machinery lost or damaged. Declaration of Matthew Campen, ¶ 11.

14.   A&T never informed RLI that A&T chartered M/V UNCLE JOHN.  Declaration of Matthew Campen, ¶ 12.

## III   ARGUMENT

### A   SUMMARY JUDGMENT STANDARD

There are two requirements that must be met before a summary judgment can be granted.  First, there must be no disputed material facts, and, second, the moving party

must be entitled to judgment as a matter of law.  Fed. R. Civ. Proc. R. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c))("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

With respect to disputes involving the interpretation of insurance contracts, they are "often resolved at the summary judgment stage because the interpretation of an insurance policy presents a question of law." *Satterfield and Pontikes Construction, Inc. v. United States Fire Insurance Co.*, 898 F.3d 574, 578 (5th Cir. 2018), *citing Cooper Industries, Ltd. v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, 876 F.3d 119, 128 (5th Cir. 2018).

A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact, and show that, based on those undisputed facts, it is entitled to judgment as a matter of law. *Id.* at 323.  If the moving party meets those burdens, the burden then shifts to the non-moving party.

The substantive law identifies which facts are material.  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir.

2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  A court only draws reasonable inferences in favor of the non-moving "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

### B   MARINE PROTECTION & INDEMNITY POLICIES

The Policy is a marine protection and indemnity policy, more commonly referred to as a P&I policy.  As such, and as recognized by A&T, there is no duty to defend A&T in the P&I policy.  Memorandum in Support, pp.5-6 [R. Doc. 46-1].  Instead, the assured must defend itself, and, subject to all of the other terms and conditions of the policy, a P&I policy may (if included within the scope of coverage) provide for reimbursement of costs related to that defense.  Importantly, "[l]egal expenses defending a claim that it is not covered by the P&I policy would not be covered."  Robert T. Lemon, II, *Allocation of Marine Risks: An Overview of the Marine Insurance Package*, 81 Tul. L. Rev. 1467, 1486

(2007).

Louisiana recognizes this distinction between reimbursement policies (such as the Policy here) and duty-to-defend policies, and acknowledges that there is no duty to defend an insured upon the filing of a petition against it under a reimbursement policy. *See Chicago Property Interests, LLC v. Broussard*, 08-526, pp.8-9 (La. App. 5th Cir. 1/13/09), 8 So. 3d 42, 47-48, *citing Quinlan v. Liberty Bank and Trust Co.*, 575 So. 2d 336, 348 (La. 1990). As the Louisiana Supreme Court held,

> an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss. BLACK'S LAW DICTIONARY 692-93 (5th ed. 1979); Appleman, Insurance Law and Practice (Buckley ed.) §§ 4261, 6668. Therefore, a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid. The allegations of the complaint against the indemnitee are irrelevant to the indemnitor's obligation to pay. Rather, it is the terms of the indemnity agreement which govern the obligations of the parties....

*Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987).

Under these guiding tenets, any obligation of any sort that RLI may ever have to A&T is determined by the terms of the reimbursement P&I policy, and is dependent on a final determination of whether there is or is not coverage under that policy. Unlike a general liability policy, the so-called "eight corner rule" of matching the allegations of the petition to the terms of the policy has no place in determining the ultimate liability of the insurer. If, and only if, there is a final determination that there is coverage for A&T's liability (as opposed to theoretical or potential coverage for the allegations lodged against A&T), then the amount of the covered loss may be reimbursed to A&T. Since there is admittedly no duty to defend A&T, A&T has no current claim for reimbursement.

C  **INTERPRETATION AND ENFORCEMENT OF INSURANCE POLICIES**[2]

Absent controlling general maritime law, the interpretation of a contract of marine insurance in admiralty cases will abide state law. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 1955 AMC 467 (1955). There is no controlling general maritime law for this situation.

Under Louisiana law, an insurance contract is the law between the parties and should be interpreted as any other contract. The Louisiana Supreme Court has made this clear on numerous occasions, and, in *Sims v. Mulhearn Funeral Home, Inc.,* 2007-0054 (La. 5/22/07), 956 So. 2d 583, summarized its deeply-rooted holdings as follows:

> First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *LeBlanc v. Aysenne*, 05–0297, p.3 (La. 1/19/06), 921 So. 2d 85, 89; *Edwards v. Daugherty*, 03–2103, p.11 (La. 10/1/04), 883 So. 2d 932, 940; *Cadwallader v. Allstate Insurance Co.*, 02–1637, p.3 (La. 6/27/03), 848 So. 2d 577, 580; *Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co.*, 93–0911, p.5 (La. 1/14/94), 630 So. 2d 759, 763.

*Id.,* 956 So. 2d at 588-89. *See also Green ex rel. Peterson v. Johnson*, 2014-0292 (La. 10/15/14), 149 So. 3d 766, 770-71 ("According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent; this analysis is begun by reviewing the words of the insurance contract. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and courts must enforce the contract as written").

---

[2]      Addressing Section 2 of Memo. in Support, pp.3-5.

This means that the terms of an insurance policy should not be contorted in an effort to change their ordinary meanings:

> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning....  An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion.... The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent.

*Cadwallader v. Allstate Insurance Co.*, 848 So. 2d 577, 580 (La. 6/27/03) (citations omitted); *see also* La. Civ. Code art. 2047 ("The words of a contract must be given their generally prevailing meaning").[3]

When the applicable wording of a policy is free from ambiguities, no extrinsic evidence may be admitted against it:

> "when a contract can be construed", such as in this case, "from the four corners of the instrument without looking to extrinsic evidence, the questioning of contractual interpretation is answered as a matter of law and summary judgment is appropriate." *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So. 2d 1024, 1029.

*In re McDermott Inc.*, 2003-1960 p.5 (La. App. 4th Cir. 5/19/04), 875 So. 2d 863, 866.

There is no apparent conflict between Louisiana law and federal maritime law in interpreting the maritime P&I policy at issue here.   The court therefore may apply Louisiana substantive law to guide its interpretation of the Policy.

In *South Louisiana Ethanol, LLC v. Messer*, 932 F. Supp. 735 (E.D. La. 3/18/13), Judge Lemelle wrote:

---

[3]     A&T agrees generally with this standard of law.  *See* A&T's Memo in Support, R. Doc. 46, p.4.

> "Construction of a marine insurance policy 'usually involves a question of law which can be resolved properly in the framework of a motion for summary judgment.' " *Dredging* [*Supply Co., Inc. v. American First Insurance Co.*, Civ. A. No. 06-1744, 2008 WL 3851587, *3 (E.D. La. Aug. 13, 2008)], citing *Bonin v. Westport Ins. Corp.*, 930 So.2d 906, 910 (La. 2006). An insurance policy should be construed using the general rules of contract interpretation, as provided by the Louisiana Civil Code. *Dredging*, 2008 WL 3851587 at *3, *citing Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). The Court's role "is to ascertain the common intent of the parties to the [insurance] contract." *Id.*, (emphasis added). An insurance contract should be enforced as written, and the Court should not use rules of contractual interpretation to alter unambiguous terms and policy provisions. *Id.*

*Id.* at 738.

Importantly, when determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms. *Doerr v. Mobil Oil Corp.*, 2000–0947, p.5 (La. 12/19/00), 774 So. 2d 119, 124, *modified on other grounds on reh'g*, 2000–0947 (La. 3/16/01), 782 So. 2d 573.

### D   A&T HAS NOT PROVEN A RIGHT TO INTERIM REIMBURSEMENT

In order for A&T to prevail on its interim claim for reimbursement of defense costs, A&T must prove that it has met all of the requirements for coverage under the Policy and that it is legally entitled to coverage. It has not done so. The Policy has more to it than the Automatic Attachment Clause on which A&T relies.[4]  Indeed, the Automatic Attachment Clause itself requires more than mere acquisition of a new vessel in order to have that vessel insured under the Policy, contrary to A&T's suggestion.

The Policy has several important requirements that A&T must affirmatively prove were met before coverage can attach. They include the following:

---

[4]      Memo. in Support, pp.2-3.

1.      The Prompt Notice Warranty requires A&T, as a warranty (that is, a condition precedent to coverage), to give prompt notice of any occurrence that may result in loss, damage and/or expense to RLI, and forward all related documents as soon as practicable upon receipt by A&T.  A&T did not give any notice of the allision to RLI within the year before this action was filed against A&T and Alexis Marine.

2.      The Automatic Attachment Clause requires A&T to report as soon as practicable the additional vessel, M/V UNCLE JOHN.  A&T did not report M/V UNCLE JOHN to RLI before A&T cancelled the Policy, nor at any time within the year before this action was filed against A&T and Alexis Marine.

3.      The Notice of Loss Warranty requires A&T, as a warranty (that is, as a condition precedent to coverage), to give prompt notice to RLI of any occurrence that may result in loss, damage and/or expense to RLI.  It also mandates that A&T, within 60 days after a loss, render to RLI a proof of loss signed and sworn by A&T.  A&T did not give any notice of the allision to RLI within the year before this action was filed against A&T and Alexis Marine, nor did A&T ever render a sworn proof loss.

4.      The Thirty-day Certificate Warranty requires A&T, as a warranty (that is, as a condition precedent to coverage), to notify RLI of any new charter or other contract involving A&T's agreement to indemnify or hold harmless any party (such as its purported charter of the M/V UNCLE JOHN from Alexis Marine) within 30 days of entering into such contract.  A&T did not give any notice of its purported charter of M/V UNCLE JOHN at any time within the year before this action was filed against A&T and Alexis Marine.

The failure by A&T to meet even one of the above requirements voids coverage for the claims asserted in this action. A&T seeks to have the vessel M/V UNCLE JOHN insured under the Policy. However, since A&T never informed RLI about M/V UNCLE JOHN (as required by the Policy), there is no coverage for that vessel. If the court opts to pretermit that issue and assume for the sake of argument that M/V UNCLE JOHN was insured, there still is no coverage for the allision because of A&T's inexcusable failure or refusal to notify RLI of the allision. Under either analysis, the claims asserted against A&T are not covered by the Policy.

### 1      *M/V UNCLE JOHN is Not Covered Under the Policy*

A&T obtained insurance for M/V UNCLE BLUE and only M/V UNCLE BLUE. However, M/V UNCLE BLUE was not involved in this allision. M/V UNCLE BLUE is the only vessel scheduled under the Policy and it is only for the liabilities of M/V UNCLE BLUE that coverage would attach.

A&T argues that by operation of the Policy's Automatic Attachment Clause, the vessel M/V UNCLE JOHN was insured for the allision.[5] A&T's argument is without merit.

RLI's Policy provided coverage for the loss of, or damage to M/V UNCLE BLUE based upon the named perils contained within the Policy. Although A&T admitted that M/V UNCLE JOHN was the vessel involved in the March 10, 2020, incident, A&T failed to add the vessel to the Policy's vessel schedule or through a policy endorsement or through any sort of notice whatsoever to RLI. A&T made no request to bind coverage

---

[5]      Memo. in Support, p.3.

for M/V UNCLE JOHN, allow for a survey of the vessel, or pay any additional insurance premiums for the new vessel.[6]

When A&T cancelled the Policy on April 23, 2020,[7] the Policy's Automatic Attachment Clause was not triggered because A&T had not yet reported the acquisition of M/V UNCLE JOHN. After the cancellation, A&T had no policy to which it could add any new vessels.

A&T posits that its admitted failure to notify RLI about M/V UNCLE JOHN should not bar the vessel from being covered unless RLI can show actual prejudice, and suggests that RLI cannot show such actual prejudice.[8] However, the breach of A&T's obligation under the Automatic Attachment Clause need not cause actual prejudice to preclude coverage, and, in any event, RLI can show actual prejudice. RLI was denied the opportunity to survey the new vessel and determine whether the premium needed to be adjusted, as expressly provided by the Automatic Attachment Clause.[9] A&T's statements of equivalence between M/V UNCLE BLUE and M/V UNCLE JOHN is just that, a statement by A&T, and not a survey and evaluation by RLI.

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."

---

[6]     Declaration of M. Campen, ¶¶ 5, 6 & 14.

[7]     The original policy period for the Policy was from 01/14/2020 to 01/14/2021. A&T cancelled the Policy after the allision, but without ever informing RLI about M/V Uncle John or the allision.

[8]     Memo. in Support, p.3.

[9]     Declaration of M. Campen, ¶ 14.

*Cadwallader*, 848 So.2d at 580.  The words of RLI's Policy are crystal clear, explicit, unambiguous, and do not lead to absurd consequences.  A&T was required by the Automatic Attachment Clause to notify RLI as soon as practicable of its acquisition of M/V UNCLE JOHN.  It did not notify RLI of its acquisition of M/V UNCLE JOHN for a full year, even though it could have done so with a simple phone call to its insurance agent within a day or so of its acquisition; there was nothing to bar A&T from providing such notice and paying any additional premium that would have been charged.  There are no absurd consequences that result from requiring A&T to inform its insurer that it acquired a new vessel so that the insurer.

The Policy also is clear that A&T was required to provide notice of its purported new charter agreement within the 30 days, as A&T warranted under the Thirty-day Certificate Warranty.  There are no absurd consequences that result from requiring A&T to inform its insurer that is has assumed a new contractual obligation relative to a new vessel.

These clauses can and should be enforced as they appear in the Policy, and A&T's failure or refusal to abide by these agreements rests with A&T alone, and it is A&T (and by extension, Alexis Marine) that must bear the consequences of its failure to be its lawful contractual obligations, namely that M/V UNCLE JOHN is not a vessel insured under the Policy.

In the event the court finds the undisputed fact that A&T did not notify RLI of the new vessel, and the equally undisputed express contractual obligation of A&T to provide such notice insufficient to deny A&T's motion as a matter of law, then RLI

respectfully submits that issues of fact remain to be determined, thereby also precluding the grant of A&T's motion for summary judgment.

### 2 *There is no obligation for interim payments*

Contrary to A&T's position, the issue is not whether the Policy would reimburse defense costs, but whether it would reimburse defense costs if the claim is ultimately proven to be covered by the Policy.  This is entirely different than duty-to-defend policies As discussed above, under Louisiana law, a reimbursement policy (such as the Policy here) does not include a duty to defend, and the "cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded."  *Meloy v. Conoco, Inc.*, 504 So. 2d at 839.

Louisiana's rule of law is thus different than the alien law cited by A&T from Texas, Iowa or New York.[10]

### 3 *Absent a Final Determination of Coverage, There is No Obligation to Reimburse Defense Expenses*

A&T has avoided addressing the fact that coverage must be found after adjudication of the plaintiffs' claims, and, instead, continues down the path of theoretical coverage with an assumption that all it needs to show is that the vessel is insured.  If there is no coverage for any reason—failing to notify RLI about M/V UNCLE JOHN, failing to give notice of the claim, failing to give notice of its new contract with Alexis Marine—there is no entitlement to defense cost reimbursement. A&T's mistaken argument appears to be based on *T.H.E. Insurance Co. v. Larsen Intermodal Services*, 242

---

[10]     Memo. in Support, p.6.

F.3d 667 (5th Cir. 2001), and *DL Marine Trans., Inc. v. Suard Barge Serv's Inc.*, CA No. 01-3006 (E.D. La. Oct. 14, 2003) (Englehard, J.).   Suggesting those cases support its position, A&T maintains that by operation of the Policy's Automatic Acquisition Clause, it had coverage for the claims asserted by the Plaintiffs because coverage was not unambiguously excluded.   A&T's reliance on these cases is misplaced as this case involves a question of whether coverage is in effect in the first place, rather than whether a claim is excluded from coverage.

For example, in *T.H.E*, the court found that there was a duty to defend the insured under the policy, and the insurance company in fact defended its insured.   The case presented for adjudication was whether the insurer could recover the costs of its defense from the insured.   With the Fifth Circuit finding that there was a policy-based duty to defend the insured, court held that the insurer could not recoup its defense expenses. A&T uses the case for the proposition that the failure to timely add a new vehicle to the trucking policy did not thereby preclude insurance coverage.   However, in *T.H.E.*, the insurer admitted "in its brief that once coverage is timely requested, coverage attaches immediately, but an invoice reflecting the new premium is issued some time within the following thirty days."   *T.H.E. Insurance Co.*,  242 F.3d at 678.   RLI does not here admit that coverage automatically attaches, obviating any similarity with *T.H.E.*

Significantly, too, the Fifth Circuit in *T.H.E.* held that a reservation of rights precluded a finding that the insurer waived its rights to seek reimbursement of settlement funds.

The *DL Marine* decision shows that the district court was frustrated by the absence

of factual or legal authority being presented by the insurer, XL, and therefore was unable to make any definitive rulings.  Accordingly, it denied XL's motion for summary judgment on every issue other than that the value of each barge was limited to $100 plus labor and costs to remove the barges.

Addressing the XL's argument that its insured was not entitled to coverage because it waited three months to notify the insurer of the accident, the court agreed that Suard did not provide XL with prompt notice of the accident, but determined that XL failed to provide sufficient controlling or analogous jurisprudence demonstrating its entitlement to judgment as a matter of law "at this time" on the issue of breach of the notice warranty, and invited XL to revisit this issue.  *Id.* at 7, 11, 13.

The court then analyzed Suard's argument that the automatic acquisition clause of the XL policy provided coverage for the barges because the accident occurred within the policy's fifteen day window to report the acquisition to XL and to pay an additional premium. *Id.* at 15- 17.  Suard argued that the newly acquired compressor barges and the vessel's schedule already included three similar compressor barges.  *Id.*  The court said it could not make a final determination since material facts remained in dispute.

With the *T.H.E.* case involving a duty-to-defend policy, and the *DL Marine* case involving different policy wordings and many disputed material facts that prevented the court from making final decisions, these cases can have no relevance to the case before this Court.

### 4    *A&T's Breaches of Warranty As Conditions Precedent*

For nearly two centuries, Louisiana has recognized that breach of warranties in

marine insurance contracts voids coverage:

> [A]s soon as a breach of the warranty is established, it is immaterial to inquire, whether the lost was occasioned by it or not; for the insured having failed to comply with the condition on which the insurer agreed to bind himself, the latter is discharged from all responsibility.  Condy's Marshall, 348, 349, 436, 452.  Park on Insurance, 422; Phillips on Insurance, 127; Emerigon, No. 1, cap. 6, sec. 4, 164 & 168; Pothier on Ass. No. 199; Bonlay Paty Cours de Droit Commercial, vol 3, sec. 14, 507 a 510; Code de Com. Franc. art. 348.

*Goicoechea v. Louisiana State Insurance Co.*, 6 Mart. (n.s.) 51, 17 Am. Dec. 175 (La. 1827).

Warranties of notice clauses ensure that an insurer has the chance to adequately investigate a claim, to decide whether the claim should be settled, and if necessary, to prepare a defense.  *State of Mississippi v. Richardson*, 817 F.2d 1203, 1207 (5th Cir. 1987). Notice clauses also allow an insurer to prevent the insured from committing fraud and ill practices, and being put at a disadvantage in obtaining evidence.  *Resolution Trust Corp. v. Gaudet*, 907 F. Supp. 212, 216-17 (E.D. La. 1995).

Louisiana law has long recognized notice clauses and that insurance coverage can be abrogated by an insured's failure to give timely notice of loss to its insurers.  In such cases, the thorniest issue has been whether the insurer must show prejudice caused by the late notice. In *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570 (5th Cir. 1990), the Fifth Circuit reviewed the Louisiana rule in this regard.  In cases where the insured seeks recovery for its own losses, a policy provision requiring "prompt notice of claims" as a condition precedent can be enforced regardless of whether the insurer can demonstrate prejudice. *Id.* at 576.

"Prompt notice" is notice given within an objectively reasonable time in view of the facts and circumstances. *See* 13 Lee R. Russ & Thomas F. Segalla, Couch on Insurance

§190:31 (3d ed.1999).  The facts and circumstances to be considered include: (1) the extent of the insured's sophistication regarding commerce and insurance; (2) the insured's awareness that an occurrence has taken place; and (3) the insured's diligence in ascertaining whether coverage is available once becoming aware of the occurrence. *Id*. at §190:39.

A&T cannot credibly state that it was not immediately aware of the allision and damage to property by M/V UNCLE JOHN.  With that knowledge, and its nearly immediate negotiations with the property owner, A&T cannot claim that it used even a modicum of diligence to place RLI on notice of the loss by allowing nearly a year to pass before giving any notice to RLI.

Giving notice as soon as practicable means as soon as it can be done. *See Food Market Merchandising, Inc. V. Scottsdale Indemnity Company*, 196 F. Supp. 3d 1004 (D. Minn. July 22, 2016)("'As soon as practicable' means as soon as performable or feasible under the circumstances. *Cargill, Inc. v. Evanston Ins. Co.*, 642 N.W.2d 80, 86 (Minn.Ct.App.2002); Black's Law Dictionary (6th ed. 1990)(defining 'practicable' to mean performable, feasible, or possible)"); *Sayed v. Macari*, 744 N.Y.S.2d 509 (N.Y. App. Div. 2002)(nearly three-month delay in providing notice was unreasonable); *Granite State minerals, Inc. v. Am. Ins. Co.*, 435 F.Supp 159, 165 (D. Mass. 1977)(delay in notice approaching three months defeated recovery as a matter of law); *Depot Cafe v. Century Indem. Co.*, 72 N.E.2d 533 (Mass. 1947)(delay of 46 days was not in compliance with policy requirements that notice be given "as soon as practicable"); *Phillips v. Stone*, 8 N.E.2d 890 (Mass. 1937)(notice given 20 days after an accident was not "as soon as practicable").

In this case, the delay of a year without notice to RLI is unreasonable as a matter of law, and without any excuse.

### 5   *A&T's Breaches Void Coverage*

A&T breached the Policy's General Notice Provision by failing to provide RLI "prompt notice of any accident or occurrence which would give rise to a claim," thereby voiding coverage for any claim arising out of the allision, and causing actual prejudice to RLI.

A&T breached the Prompt Notice Warranty by failing to use due diligence to give prompt notice of the allision and/or by failing to forward to RLI as soon as practicable all communications, processes, pleadings and other legal papers related to the occurrence, thereby voiding coverage for any claim arising out of the Allision.

A&T breached the Notice of Loss Warranty by failing to give RLI any notice of the allision and by failing to render a proof of loss within 60 days of the occurrence, thereby voiding coverage for any claim arising out of the Allision.

A&T breached the Thirty-day Certificate Warranty, by failing to submit a Certificate of Insurance within 30 days of entering into an agreement with Alexis Marine to replace M/V UNCLE BLUE, thereby voiding coverage for any claim arising out of the Allision.

### 6   *RLI Was Prejudiced By A&T's Untimely Notice of Loss*

While RLI is not required to show actual prejudice to itself caused by A&T's breaches of its warranties and other obligations, RLI has in fact sustained actual prejudice. Foremost in this regard is A&T's judicial admission that it reached a settlement

agreement in the amount of $2,500 with the original injured land owner, but failed to fund it.  Had A&T met its warranty and other obligations and notified RLI of M/V UNCLE JOHN, the allision, the claim, and its settlement discussions, RLI would have been informed of the new vessel and the allision, and been able to adjust the loss and satisfy the $2,500 settlement in the ordinary course.  By NOT notifying RLI of M/V UNCLE JOHN, the allision, the claim, and its settlement discussions, A&T (and Alexis Marine) are now facing a damages claim of around $400,000, the arrest of M/V UNCLE JOHN, and the possible sale of that vessel.  These facts are undisputed, and it is beyond any measure of reasonable argument that allowing a claim to multiply by 160 times is not *per se* actual prejudice as a matter of law.

Nonetheless, A&T cites to *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195 (5th Cir. 1985), to support its argument that RLI was not prejudiced by its untimely notice.  However, the case itself compels the contrary result.

The purpose of the notice requirement is to give an insurer the chance to investigate a claim and to protect the insurer from being put at a disadvantage in obtaining evidence. *State of Mississippi v. Richardson*, 817 F. 2d 1203, 1207 (5th Cir. 1987); *Resolution Trust Corp. v. Gaudet*, 907 F.Supp. 212, 216-17 (E.D. La. 1995). With prompt notice of the loss, RLI's claims adjusters could have surveyed the extent of the damage, photographed the vessel and the damaged embankment, interviewed the crew and other persons involved, and possibly settled with the original owners to avoid litigation and the seizure of the vessel; however, RLI was denied these advantages by A&T's late notice

To quote from the Fifth Circuit's discussion in *Elevating Boats*, "late notification

denied the insurer the basic opportunity to adequately investigate the facts and circumstances surrounding the accident. [INA, the insurer,] lacked the opportunity to interview witnesses while their memories were fresh, examine the scene of the accident ...." *Elevating Boats,* 766 F.2d at 200. The facts in *Elevating Boats, Inc.* are analogous to the facts in this case, as is the Fifth Circuit's holding that the insurer was prejudiced by the untimely notice.

A&T relies on *Peavey Co. v. M/V ANPA*, 917 F.2d 1168 (5th Cir. 1992), for the proposition that notice of a lawsuit is adequate notice to an insurer irrespective of the requirements of the policy unless is proves actual prejudice suffered by the insurer due to late notice. A&T then goes on to suggest that if there is an open question of whether RLI was prejudiced that RLI must provide a defense until the issue is resolved. This argument avoids the question of whether there is any coverage under this indemnity reimbursement policy for the subject vessel for the subject allision. Because, as already explained, there is no duty to defend A&T and any entitlement to reimbursement must await adjudication of any final liability and a determination of coverage, this argument must fail.

## IV.   CONCLUSION

There is no dispute of fact that A&T breached (a) the Policy's General Notice Provision, (b) the Prompt Notice Warranty, (c) the Notice of Loss Warranty, and (d) the Thirty-day Certificate Warranty. There is no dispute that A&T never told RLI of its acquisition of a new vessel. A&T's breach of these condition precedent warranties and obligations voids coverage under the Policy for damage to the embankment, and relieves RLI from any duty to reimburse A&T for defense costs. Alternatively, should the court find

there are material facts still in dispute, the court is precluded from granting A&T's motion.

For these reasons, the court should deny A&T Marine Logistics, LLC's Motion for Summary Judgment.

**EZKOVICH & CO., LLC**
Alan D. Ezkovich (# 1865), T.A.
Dorothy L. Tarver (# 29714)
650 Poydras Street, Suite 1220
New Orleans, Louisiana 70130
Telephone:   (504) 593-9899
Facsimile:   (504) 593-9048
Email:   Alan.Ezkovich@EzkovichLaw.com
           Dorothy.Tarver@EzkovichLaw.com

By:   /s/   _Alan D. Ezkovich_
           E-Signed
           Alan D. Ezkovich
           Attorneys for
           RLI Insurance Company