UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT M. CHAMPAGNE III, ET AL. | * | CIVIL ACTION NO. 21-476 |
| | * | |
| VERSUS | * | SECTION: "A"(1) |
| | * | |
| M/V UNCLE JOHN, ET AL. | * | JUDGE JAY C. ZAINEY |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ORDER AND REASONS

The following motions are before the Court: **Motion for Summary Judgment for Reimbursement of Defense Costs (Rec. Doc. 46)** filed by A&T Maritime Logistics, LLC; **Motion for Partial Summary Judgment (Rec. Doc. 55)** filed by Alexis Marine, LLC; **Motion for Interlocutory Sale of the M/V UNCLE JOHN (Rec. Doc. 52)** filed by the plaintiffs, Robert M. Champagne III and Elizabeth G. Champagne; **Motion for Release of the M/V UNCLE JOHN (Rec. Doc. 61)** filed by Alexis Marine, LLC.

All motions are opposed.

The motions, submitted for consideration on August 4 and August 18, 2021, are before the Court on the briefs without oral argument.

## I.

The main demand in this case is a maritime allision action for damages. The plaintiffs, Robert M. Champagne III and Elizabeth G. Champagne, own waterfront property in Houma, Louisiana. Plaintiffs allege that on March 10, 2020, the M/V UNCLE JOHN lost control and ran aground causing extensive damage to the erosion protection concrete bank cover located on their property. On March 8, 2021, Plaintiffs filed suit in this Court against Alexis Marine, LLC *in personam* as owner of the UNCLE JOHN,

1

against A&T Maritime Logistics, LLC as the vessel's operator, and against the UNCLE JOHN *in rem*. The United States Marshal for this district arrested the vessel pursuant to a warrant issued by this Court, (Rec. Doc. 11, Warrant), Sea Sales, LLC was appointed substitute custodian, (Rec. Doc. 8, Order), and the Court granted an order to permit the vessel to move within the district (Rec. Doc. 15, Order). Unfortunately, the towing contractor hired by Sea Sales, LLC, acting in contravention to the instructions provided, towed the vessel to an unauthorized location and in doing so caused damage to the UNCLE JOHN's propulsion system. It is undisputed that when this occurred the vessel was in the custody of Sea Sales, LLC and that Plaintiffs were not involved in and had no contemporaneous knowledge of the towing detour that damaged the UNCLE JOHN. It is the Court's understanding that Sea Sales, LLC accepted responsibility for the damage to the UNCLE JOHN and paid for the necessary repairs.

To date, the UNCLE JOHN continues to remain under arrest and while Alexis Marine complains of financial hardship as a result of being deprived of its vessel, it has made no attempt to post a bond in order to secure the vessel's release. In fact, Plaintiffs advise that they have learned that Alexis Marine had no insurance to cover the damage that the UNCLE JOHN caused to their property, and that it has become apparent that Alexis Marine lacks the financial ability to obtain a bond in order to regain its vessel. Plaintiffs posit that their sole means of recourse for their property damage will be to have the vessel sold at auction.

In response to Plaintiffs' claim, Alexis Marine counter-claimed contending that there *could be* additional damage to the UNCLE JOHN caused by Sea Sales, and that the repairs *may possibly* have not been done properly, (Rec. Doc. 26, Counter-Claim ¶¶

VII-VIII), and that if there are any such problems then Plaintiffs are responsible. On June 15, 2021, the Court granted Plaintiffs' motion to dismiss Alexis Marine's counterclaim after concluding that the facts alleged supported no legally-cognizable claim for relief. (Rec. Doc. 44, Order and Reasons). In dismissing the counterclaim the Court rejected Alexis Marine's unfounded contention that it was unnecessary for Plaintiffs to have the vessel arrested—the claim against the UNCLE JOHN is an in rem claim, Alexis Marine appeared to have failed to maintain insurance of its own for damage caused by its vessel, and apparently failed to verify that the charterer on the day of the incident, A&T Maritime, carried the insurance required under that agreement. (*Id.* at 3).

A nonjury trial is scheduled for April 25, 2022. (Rec. Doc. 48, Scheduling Order).

**II.**

The Court begins with the Motion for Summary Judgment for Reimbursement of Defense Costs (Rec. Doc. 46) filed by A&T Maritime, and the related Motion for Partial Summary Judgment (Rec. Doc. 55) filed by Alexis Marine.

Both motions target a marine insurance policy (hull and indemnity) that RLI Insurance Co. issued to A&T Maritime; the policy was in effect at the time of the casualty. That policy covers damage to any dock, pier, breakwater, structure, etc.—coverage that would likely apply to the property damage in this case—"in respect of the Vessel called the ___See Vessel Schedule___." (Rec. Doc. 46-4 at 17 & ¶ 6). The only vessel listed on the Vessel Schedule is the UNCLE BLUE, which was not the vessel involved in the allision at issue. (Rec. Doc. 46-4 at 36).

3

A principal of A&T Maritime has submitted a declaration to explain this problematic situation with the Vessel Schedule. He explained that his company had a bareboat charter with Alexis Marine for the UNCLE BLUE for use on a job. (Rec. Doc. 46-5, Manuel declaration). A&T Maritime obtained the RLI policy to provide coverage while using the UNCLE BLUE and hence it is the vessel named for coverage on the Vessel Schedule. But on March 7, 2020, the UNCLE BLUE became inoperable. Alexis Marine and A&T Maritime agreed to substitute the UNCLE JOHN for A&T Maritime's use while the UNCLE BLUE was being repaired. (*Id.* ¶ 8). It was a mere three days later when the UNCLE JOHN and its tow allided with the embankment causing the damage at issue.

RLI's policy contained an Automatic Attachment Clause (Rec. Doc. 46-4 at 25), that A&T Maritime contends extended coverage to the UNCLE JOHN for the damage at issue. That clause contains a reporting requirement but it is undisputed that A&T Maritime did not provide notice to RLI of the vessel swap. (*Id.* ¶ 10). In fact, it is the Court's understanding that RLI did not learn of the vessel swap or of the allision itself until this lawsuit was filed, which was nearly a year after the casualty occurred.

A&T Maritime points out, however, that the UNCLE BLUE and UNCLE JOHN are very similar vessels, that they were being used for the same job, and that at no time were both vessels being used at the same time. (Rec. Doc. 46-5, Manuel declaration ¶¶ 11-13). So from A&T Maritime's perspective, RLI's refusal to cover the plaintiffs' claim is based on a technicality that is without significance, *i.e.*, "BLUE" being printed on the Vessel Schedule instead of "JOHN," having no connection with the risk insured against.

4

But A&T Maritime is not seeking a ruling on coverage via its motion for summary judgment, given that RLI has asserted numerous coverage defenses some of which A&T Maritime will argue should be waived. In other words, many issues factor into whether RLI must ultimately indemnify A&T Maritime (and Alexis Marine as an additional insured). Instead, to keep things simple at this juncture, A&T Maritime seeks a ruling that it is entitled to be reimbursed for its defense costs, which total $3,324.80 to date, and it appears that A&T Maritime wants to reimbursed on an ongoing basis while this litigation is pending. A&T Maritime assures the Court that this relief can be provided based on an "eight corners" analysis without actually delving into the thorny issue of whether the policy provides coverage for the damages claimed.

In opposition, RLI argues that A&T Maritime's ability to obtain reimbursement for its defense costs depends completely on a favorable coverage determination (in favor of the insured not the insurer) because its policy is a typical P&I marine policy, insofar as it provides indemnity only with no concomitant duty to defend. RLI argues that the "eight corners" rule, which requires an insurer to look to the four corners of the petition and the four corners of the policy to determine whether it has a duty to defend, *see Vaughn v. Franklin*, 785 So. 2d 79, 84 (La. App. 1st Cir. 2001), is inapplicable to an indemnity only policy that does not include a duty to defend. RLI argues that with an indemnity only policy, the reimbursement of defense costs to the insured is simply one more aspect of the indemnification that the policy provides for covered losses. And when claims are not covered and therefore no indemnity is owed to the insured, the insured's defense costs are not reimbursed.

In *Gabarick v. Laurin Maritime (America), Inc.*, 650 F.3d 545, 552-53 (5th Cir. 2011), the Fifth Circuit explained that P&I policies do not ordinarily create a duty to defend because they are indemnity policies not liability policies. With only a duty to pay covered claims and no duty to defend, "reimbursement of defense costs *must be footed on the indemnification*" provided by the policy. *Id.* at 553 (emphasis added).

The Court is persuaded that RLI has the better argument insofar as reimbursement of defense costs is concerned. None of the decisions that A&T Maritime cites in its memorandum in support pertain to the issue of whether the eight corners rule applies to an indemnity only policy. With a liability policy an insurer may very well have the duty to defend a claim that presents a questionable case for coverage—the eight corners analysis comes in because the insurer's duty to defend is broader than it duty to indemnify. *See Arceneaux v. Amstar Corp.*, 200 So. 3d 277, 281 (La. 2016) (citing *Elliott v. Continental Cas. Co.*, 949 So. 2d 1247, 1250 (La. 2007)). But again, RLI's policy does not include a duty to defend (A&T Maritime does not dispute this) so the eight corners rule does not apply; the entitlement to reimbursement of defense costs merges with the entitlement to indemnity, all subject to the same policy limit (absent policy language to the contrary). A&T Maritime points to no language in the policy that would suggest that the insurer reimburses defense costs for a claim absent an obligation for indemnity with respect to that claim. The cases that A&T Maritime cites, and much of its argument in its memorandum in support, all go to the issue of coverage notwithstanding A&T Maritime's contention that the Court need not make that determination in order to award defense costs. Because A&T Maritime's motion for summary judgment is based on erroneous legal premises, *i.e.*, that the eight corners rule applies, and that RLI's

6

obligation to cover the claim at issue is separate from its duty to reimburse the insured

for defense costs incurred, it must be DENIED. The Court expresses no opinion on

whether the policy's Automatic Attachment Clause was triggered or whether RLI waived

any of its coverage defenses because those determinations are unnecessary to the

Court's ruling.[1]

Alexis Marine's motion for partial summary judgment, which was a tag a long

motion to A&T Maritime's motion, is likewise DENIED.[2]

### III.

The next two motions, the Motion for Interlocutory Sale of the M/V UNCLE JOHN

(Rec. Doc. 52) filed by the plaintiffs, and the Motion for Release of the M/V UNCLE

JOHN (Rec. Doc. 61) filed by Alexis Marine, pertain to the fate of the UNCLE JOHN

while this litigation is pending.

The plaintiffs move the Court to order that the vessel be sold at an interlocutory

auction pursuant to Rule E(9)(a)(i)(B) or (C) of the Supplemental Rules for Admiralty or

Maritime Claims. Part (B) permits for an interlocutory sale when the expense of keeping

the property is excessive or disproportionate. Part (C) permits an interlocutory sale

when there has been an unreasonable delay in securing release of the property. The

---

[1] If the issue of coverage is ripe based on the status of discovery, then either RLI or A&T Maritime or both can move for summary judgment on that issue. Importantly, no part of this case will be tried to a jury. The Court will sit as the finder of fact on all claims, and therefore will be tasked with resolving any factual disputes. In bench trial cases the district judge has greater discretion to grant summary judgment. *Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019). The district judge may "decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)). Unless witness credibility will be a part of determining coverage, and the Court cannot imagine why that would the case, coverage most likely can be determined via motion.

[2] The Court notes that in addition to seeking reimbursement for defense costs Alexis Marine wants RLI to post security in order to have the UNCLE JOHN released.

foregoing rules permitting an interlocutory sale based on these two factors are worded in the disjunctive so either circumstance will suffice. Plaintiffs advise that they are incurring about $3,700 per month to keep the UNCLE JOHN under arrest and that to date their costs incurred total over $40,000. With trial scheduled for next spring their costs are on course to exceed $75,000. Plaintiffs posit that the value of the vessel is likely somewhere between $361,000 - $400,000 but the costs to repair their damaged embankment will be in excess of $400,000, which means that the cost to keep the UNCLE JOHN docked and in custody pending trial are excessive and disproportionate.

Meanwhile, the plaintiffs also point out that the UNCLE JOHN was arrested on March 9, 2021, which was over five months ago, yet Alexis Marine has failed to secure the release of the vessel. The plaintiffs argue that the delay is already unreasonable, and will continue to become even more so as time passes. And given that Alexis Marine seems to lack the financial ability to secure the vessel's release, coupled with the fact that RLI is disputing coverage for the plaintiffs' damages claim, there is no reason to believe that things will change any time soon.

Alexis Marine not only opposes having the vessel sold, it moves the Court to either release the vessel or hold a hearing to determine the value of the vessel for purposes of posting security. Alexis Marine believes that the vessel is more likely worth $250,000 to $300,000.[3] Alexis Marine seeks court intervention in order to help it regain possession of its vessel.

---

[3] The affidavit opinion submitted by surveyor Kyle Smith is wholly inadequate to establish the value of the vessel. (Rec. Doc. 61-7). The survey and appraisal submitted by Plaintiffs was far more appropriate. (Rec. Doc. 52-3).

As the Court appreciates the case, there no dispute as to whether the UNCLE JOHN allided with Plaintiffs' property and caused some damage. Alexis Marine's contention that the vessel should be released because it was unnecessary for Plaintiffs to arrest the UNCLE JOHN—a contention that the Court has attempted to disabuse Alexis Marine of once before—demonstrates that Alexis Marine is laboring under a fundamental misunderstanding of the nature of in rem proceedings against a tortious vessel and how they differ from in personam proceedings against the vessel's owner. Plaintiffs did not arrest the UNCLE JOHN in order to secure an appearance by Alexis Marine, and they did not arrest the UNCLE JOHN in disregard of the fact that A&T Maritime was operating the vessel when the damage occurred. The plaintiffs arrested the UNCLE JOHN because the vessel allided with their property and damaged it; this maritime tort gave rise to a maritime lien against the offending vessel in their favor.

Under Rule C of the Supplemental Rules for Admiralty or Maritime Claims, a vessel may be arrested to enforce a maritime lien in an in rem proceeding. The in rem claim against the vessel is a separate claim from the in personam claim against the vessel's owner and under the admiralty law of the United States in personam and in rem actions may arise from the same claim. *Belcher Co. v. M/V Maratha Mariner*, 724 F.2d 1161, 1163 (5th Cir. 1984). A maritime lien is a security device for a debt or claim that arises by operation of law and it grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds. *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986). The maritime lien concept somewhat personifies a vessel as an entity with potential liabilities independent and apart from the personality of its owner, *id.* at 602 (citing *Todd Shipyards Corp. v. City of Athens*, 83 F.

Supp. 67 (Md. 1949), and therefore is only indirectly connected with the vessel owner, *id.* (quoting *Pierside Term. Opers.*, 389 F. Supp 25, 26 (E.D. Va. 1974).

Thus, Alexis Marine's argument that Plaintiffs are focusing on the wrong party or that Alexis Marine is without fault for the claimed damages misses the point. Plaintiffs are not persecuting Alexis Marine, which apparently lacks the financial ability to post security for the UNCLE JOHN much less to satisfy their damages claim. Rather, they are attempting to enforce the maritime lien that they have against the UNCLE JOHN for payment of the damages that the vessel caused when it allided with their property. If the vessel must remain under arrest and unavailable to Alexis Marine—a circumstance that causes financial hardship to both sides—and if the vessel must be sold to cover the damages that it caused, then the sole party responsible for that unfortunate circumstance is Alexis Marine because it did not properly insure its vessel. Alex Marine's request to have the vessel released without posting substitute security is denied.

Alexis Marine requests in the alternative that the Court set a hearing to determine the value of the UNCLE JOHN given the parties' disagreement on that point, the plaintiffs believing that $600,000 would be an appropriate amount of security and Alexis Marine believing that something more in the neighborhood of $250,000 would be appropriate. The Court denies that request at this time because it would appear to be an exercise in futility. Alexis Marine gives no indication that it is willing or able to post security regardless of the value that the Court might assign to the vessel. Alex Marine's briefing makes clear that what it really wants is for the Court to force other parties, whether RLI or A&T Maritime, to provide security so that it can regain its vessel. Alexis

Marine provides no legal basis for the Court to compel other parties to meet this obligation on an interlocutory basis.[4]

It is clear that the plaintiffs and Alexis Marine want the UNCLE JOHN released but the plaintiffs understandably cannot agree to the release unless security is posted in a proper and sufficient amount. While the Court agrees that the vessel need not be sold *immediately* it remains that it will be cost prohibitive to keep the UNCLE JOHN under arrest until this case is concluded. The Court will give Alexis Marine thirty (30) days from entry of this Order and Reasons to either post security or reach an agreement with Plaintiffs,[5] after which Plaintiffs may re-move to have the vessel sold at an interlocutory sale.[6] The Court therefore DENIES WITHOUT PREJUDICE the plaintiffs' motion for interlocutory sale. Alexis Marine's motion for immediate release of the vessel or alternatively for a hearing to determine value is DENIED.

Accordingly, and for the foregoing reasons;

---

[4] The Court recognizes that Rule E(4)(f) provides the owner of arrested property a "prompt" hearing at which the plaintiff must show why the attachment should not be vacated. Ignoring that Alexis Marine has allowed the vessel to remain under arrest for over five months now, Alexis Marine does not even hint at anything to suggest that the attachment was improper and should be vacated. In fact, Alexis Marine's arguments for vacatur are based on the legally erroneous arguments that the Court discussed above.

[5] If Alexis Marine is willing and able to post security, and if the point of contention then becomes the amount of security, then Alexis Marine can re-urge its request for a hearing.

[6] The Court does agree with Alexis Marine's observation that the plaintiffs' assertion that the anticipated cost to repair their embankment will be over $400,000, made by their attorney after speaking with an expert, is insufficient to demonstrate the amount of their damages for purposes of setting the amount of security. (Rec. Doc. 52-4, Stassi affidavit ¶ 13).

IT IS ORDERED that the **Motion for Summary Judgment for Reimbursement of Defense Costs (Rec. Doc. 46)** filed by A&T Maritime Logistics, LLC is **DENIED**.

IT IS FURTHER ORDERED that the **Motion for Partial Summary Judgment (Rec. Doc. 55)** filed by Alexis Marine, LLC is **DENIED.**

IT IS FURTHER ORDERED that the **Motion for Interlocutory Sale of the M/V UNCLE JOHN (Rec. Doc. 52)** filed by the plaintiffs, Robert M. Champagne III and Elizabeth G. Champagne, is **DENIED.**

IT IS FURTHER ORDERED that the **Motion for Release of the M/V UNCLE JOHN (Rec. Doc. 61)** filed by Alexis Marine, LLC is **DENIED.**

August 19, 2021

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE