UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT M. CHAMPAGNE III, ET AL. | * | CIVIL ACTION NO. 21-476 |
| VERSUS | * | SECTION: "A"(1) |
| M/V UNCLE JOHN, ET AL. | * | JUDGE JAY C. ZAINEY |

**ORDER AND REASONS**

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 126)** filed by third-party defendant/cross-defendant RLI Insurance Co. Alexis Marine, LLC and A&T Maritime Logistics, LLC oppose the motion. The motion, submitted for consideration on September 14, 2022, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

**I.**

The main demand in this case—no longer at issue—was a maritime allision action for damages brought by Robert M. Champagne III and Elizabeth G. Champagne against the M/V UNCLE JOHN, its owner, Alexis Marine, LLC, and the charterer/operator of the vessel at the time of the allision, A&T Maritime Logistics, LLC. The Champagnes own waterfront property in Houma, Louisiana. On March 10, 2020, the M/V UNCLE JOHN lost control and ran aground causing extensive damage to the erosion protection concrete bank cover located on their property.[1] On March 8, 2021,

---

[1] The property was not owned by the Champagnes when the allision occurred. It was owned by Ms. Milly Dampeer. No one has disputed the Champagnes' right as subsequent purchasers to pursue the property damage claim against the defendants.

1

the Champagnes filed suit in this Court against Alexis Marine, LLC *in personam* as owner of the UNCLE JOHN, against A&T Maritime Logistics, LLC as the vessel's operator, and against the UNCLE JOHN *in rem*. The United States Marshal for this district arrested the vessel pursuant to a warrant issued by the Court. (Rec. Doc. 11, Warrant).

The main demand filed by the Champagnes settled on November 18, 2021, which took the Champagnes out of the case and left remaining only the various cross claims and third-party demands. (Rec. Doc. 107, Minute Entry). Following that settlement the warrant of arrest was vacated and the UNCLE JOHN was released to Alexis Marine, LLC.[2] (Rec. Doc. 109, Order).

In the wake of the settlement the focus of the litigation became Alexis Marine's and A&T Maritime's coverage claims against RLI Insurance Co. pursuant to a marine insurance policy (hull and indemnity) that RLI had issued to A&T Maritime. (Rec. Doc. 116, Minute Entry). The policy was in effect at the time of the allision, and both A&T Maritime and Alexis Marine brought claims against RLI seeking the benefits of that policy in conjunction with the Champagnes' lawsuit.

After the partial settlement, all scheduling order deadlines and the trial date were vacated pending the completion of discovery pertaining to insurance coverage, and the

---

[2] The UNCLE JOHN remained under arrest for a significant period of time due to Alexis Marine's failure to post a bond in order to secure the vessel's release. Alexis Marine had not procured insurance of its own to cover the alleged damage, and RLI was disputing (and continues to dispute) coverage under the policy that it issued to A&T Maritime. The vessel's continued arrest caused financial hardship to both Alexis Marine, who was deprived of its vessel, and to the Champagnes, who were required to fund the ongoing expenses of keeping the vessel under arrest. The Court addressed several motions by those parties pertaining to the vessel's continued state of seizure until the main demand settled.

filing of motion(s) directed at coverage. (*Id.*). During prior motion practice in August 2021 involving RLI's duty to pay defense costs under its policy, the Court observed:

> If the issue of coverage is ripe based on the status of discovery, then either RLI or A&T Maritime or both can move for summary judgment on that issue. Importantly, no part of this case will be tried to a jury. The Court will sit as the finder of fact on all claims, and therefore will be tasked with resolving any factual disputes. In bench trial cases the district judge has greater discretion to grant summary judgment. *Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019). The district judge may "decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)). Unless witness credibility will be a part of determining coverage, and the Court cannot imagine why that would the case, coverage most likely can be determined via motion.

(Rec. Doc. 93, Order and Reasons at 7 n.1).[3]

The issue of coverage is now ripe based on the status of discovery.[4] Via the instant motion, RLI moves the Court to grant summary judgment dismissing the third-party demand filed by Alexis Marine and the UNCLE JOHN, dismissing the cross-claim

---

[3] Coverage for the allision was not argued in that motion because the movants sought to divorce the duty to defend (that is, to be reimbursed for defense costs on an ongoing basis while the litigation was pending) from the issue of coverage, which is often appropriate for liability policies. But the Court rejected this approach and ruled in favor of RLI insofar as its policy is a typical P&I marine policy that provides indemnity only with no duty to defend. (Rec. Doc. 93, Order and Reasons at 6-7). The duty to *reimburse* defense costs *may* be part of the indemnification provided if the policy is determined to cover the loss at issue but the policy imposes no duty to defend. And absent coverage, reimbursement for defense costs will not be available. (*Id.*).

[4] The status of discovery presents no impediment to the coverage determination. But when Alexis Marine filed its opposition on September 9, 2022, it argued to the contrary. In order to defeat summary judgment, Alexis Marine argued that RLI's motion should be denied as premature in light of a motion to compel that was then pending before the magistrate judge. (Rec. Doc. 129, Opposition at 2). But just a few days later, the magistrate judge issued her ruling denying that motion to compel, finding that the information being sought was not only overbroad but irrelevant. (Rec. Doc. 131, Order and Reasons). The magistrate judge found that Alexis Marine's overbroad request was a "fishing expedition without any realistic possibility of turning up information relevant to the matters in dispute." (*Id.* at 2). As of this writing, no motion seeking review of that sound ruling has been filed. Thus, the Court considers the issue of coverage to be ripe based on the status of discovery.

filed by A&T Maritime, and granting RLI's counterclaim against A&T Maritime declaring that RLI has no duties or obligations to A&T Maritime under its policy.

## II.

Alexis Marine owns the M/V UNCLE JOHN. A&T Maritime was operating the vessel on March 10, 2020, the date that the M/V UNCLE JOHN damaged the Champagnes' property. The RLI policy in effect on that date was issued to A&T Maritime as the assured. The Hull and Protection & Indemnity Declaration page for the policy refers throughout to the "Vessel Schedule." (Rec. Doc. 129-9 at 6). The dec page references neither named vessels nor generic classes of vessels—rather everything refers to the Vessel Schedule. The specific coverage section at issue in this case is no different. The pertinent Protection and Indemnity Clause states that the policy covers damage to any dock, pier, breakwater, structure, etc.—coverage that would likely apply to the property damage in this case—"in respect of the Vessel called the ___See Vessel Schedule___." (Rec. Doc. 126-9 at 15 & ¶ 6).

The Vessel Schedule does not reference generic classes of vessels. Each vessel to be insured under the policy is listed individually by name along with the deductible to be applied for that specific vessel when property damage occurs. (Rec. Doc. 126-9 at 34). The only vessel listed on the Vessel Schedule is the UNCLE BLUE, which was not the vessel involved in the allision at issue. The UNCLE JOHN, the offending vessel in this case, is not listed on the Vessel Schedule.

Given that the RLI policy unambiguously relies on the Vessel Schedule throughout to determine coverage, premiums, limits, and deductibles, any argument that the policy should be deemed to cover the UNCLE JOHN simply because it is similar to

the UNCLE BLUE and was used in a similar manner must be rejected. A&T Maritime may view it as an insignificant technicality that the Vessel Schedule says "BLUE" instead of "JOHN" but the policy is structured to specifically identify insured vessels by name. The RLI policy does not insure the UNCLE JOHN as a scheduled vessel.

The facts giving rise to the UNCLE JOHN's absence on the Vessel Schedule are not in dispute. Alexis Marine owns both the UNCLE BLUE and the UNCLE JOHN. A&T Maritime chartered both vessels via two separate charter agreements. In December 2019 A&T Maritime chartered the UNCLE JOHN from Alexis Marine. (Rec. Doc. 126-10, Exhibit F). But A&T Maritime did not take possession of the vessel at that time. A&T Maritime did not request insurance for the vessel when it executed the charter.

When A&T Maritime needed the UNCLE JOHN on January 13, 2020 for a job, it was unavailable so A&T Maritime separately chartered the UNCLE BLUE from Alexis Marine on that date. (Rec. Doc. 126-5, Exhibit B Manuel Affidavit). A&T Maritime obtained the RLI policy (effective January 14, 2020) and listed on the UNCLE BLUE on the Vessel Schedule as the insured vessel. No one disputes that the UNCLE BLUE was properly insured as a scheduled vessel.

But again, the UNCLE BLUE did not cause the damage that gave rise to this lawsuit. On March 7, 2020, A&T Maritime and Alexis Marine agreed to substitute the UNCLE JOHN for the UNCLE BLUE so that the latter vessel could undergo repairs. (*Id.*). A&T Maritime did not contact RLI (or its agent) to provide notice about the swap or to advise that A&T Maritime intended to operate an unscheduled vessel. It was during the period of time that A&T Maritime operated the UNCLE JOHN, March 7, 2020

through March 21, 2020, that the allision occurred (on March 10, 2020). A&T Maritime did not notify RLI of the allision and the potential for a claim.

Later in March 2020 following the allision, A&T Maritime and Alexis Marine agreed again to substitute the UNCLE JOHN for the UNCLE BLUE in order to facilitate vessel repairs. (Rec. Doc. 126-5, Exhibit B Manuel Affidavit ¶ 8).

A&T Maritime cancelled the RLI policy effective April 23, 2020.

The record contains an email from Ms. Dampeer, the property owner at the time, to Mr. Manuel (A&T Maritime's principal) dated August 30, 2020. (Rec. Doc. 126-7). That email transmitted an engineer's inspection report, that Manuel requested. Ms. Dampeer advises that the damage from March 2020 was worsening, and given that Manuel had indicated that he did not want to involve his insurance company, she urged him to respond so that the damage could be mitigated. (*Id.*).

A&T Maritime has never denied fault for the allision. Manuel attempted to negotiate a settlement with Ms. Dampeer on his own and he testified that they had reached an agreement for $3500.00. (Rec. Doc. 126-6 at 16, Manuel deposition). It is the Court's understanding that A&T Maritime never paid Ms. Dampeer what had been promised for the damage. A&T Maritime still had not notified RLI of the allision and the potential for a claim.[5]

RLI learned about the allision after the Champagnes filed their lawsuit against Alexis Marine, A&T Maritime, and the UNCLE JOHN, in other words, nearly a year after

---

[5] It is unclear why A&T Maritime chose to keep RLI in the dark about the claim but ignorance regarding the claims process cannot be the reason. It is the Court's understanding that the allision was A&T Maritime's third accident since the policy's inception. The other two incidents involved the UNCLE BLUE and A&T Maritime had twice successfully submitted those claims.

6

the incident. It is the Court's understanding that the main demand settled for a significant amount far exceeding the original $3500.00 that Ms. Dampeer was willing to accept for the damage. A&T Maritime and Alexis Marine are now looking to RLI to pay for the settlement and to reimburse their defense costs.

Contrary to A&T Maritime's contention (Rec. Doc. 128, Opposition at 2), RLI *does* contest coverage, an issue for which A&T Maritime and Alexis Marine have the burden of proof. Alexis Marine claims that it is an additional insured on the policy. Only if coverage for the UNCLE JOHN is established will consideration of the application of policy exclusions become necessary, for which RLI will have the burden of proof. And of course Alexis Marine's status as an additional insured presents a moot issue if there is no coverage for the UNCLE JOHN.

Given that the UNCLE JOHN was not listed on the Vessel Schedule, A&T Maritime and Alexis Marine rely on the policy's Automatic Attachment Clause to argue that the UNCLE JOHN was covered for the damage at issue. The Automatic Attachment Clause states in relevant part:

> ***This Policy is extended to cover automatically any additional Vessels acquired by the Assured by purchase or by bareboat charter.*** It is also extended to cover the interest of the Owners of any such Vessel if required by agreement between Assured and Owner.
>
> . . .
>
> ***The Assured agrees to report as soon as practicable such additional Vessel(s) and/or interests.*** This insurance shall not be prejudiced by an unintentional delay or omission in making such reports, or any unintentional error in the value or description of vessel(s) to be reported, if prompt notice be given to the Company as soon as said delay or omission or error becomes known to the Assured and the premium shall be adjusted, as required.

(Rec. Doc. 126-9 at 23) (emphasis added).

7

RLI posits several reasons that the UNCLE JOHN did not become a covered vessel pursuant to the Automatic Attachment Clause, the most salient being that the clause expressly applies only to *additional* vessels not a vessel like the UNCLE JOHN that was acquired pursuant to a bareboat charter that pre-dated the policy. According to RLI, A&T Maritime got legal and exclusive possession of the UNCLE JOHN when the charter was executed in December 2019 so the UNCLE JOHN cannot be characterized as an *additional* vessel, a term that the policy does not define.

The Court disagrees. The UNCLE JOHN was acquired by a bareboat charter agreement whose effective date for the charter was designated as the delivery date of the vessel. (Rec. Doc. 126-10, Exhibit F ¶ 3). The vessel was not delivered to A&T Maritime until March 7, 2020, which was after the policy's effective date. A&T Maritime had neither legal nor exclusive control of the vessel until that date, nor any control of it for that matter, and it was for this reason that it was forced to charter the UNCLE BLUE. "Additional" vessel does not equate to a vessel whose charter agreement was signed prior to the policy date with no attendant delivery/possession but rather to a vessel whose name does not appear on the Vessel Schedule. Regardless of when the UNCLE JOHN's charter agreement was executed, delivery of the vessel and acceptance of possession, which according to express terms of the charter is when the vessel would actually be on charter, did not occur until *after* the policy was in effect. According to the express terms of the Automatic Attachment Clause, coverage for the UNCLE JOHN attached automatically on March 7, 2020.

But RLI also points out that the acquisition was never reported much less *as soon as practicable.* RLI did not learn about the UNCLE JOHN until the lawsuit was filed

8

and that was long after the policy had been cancelled in April 2020. By then, according to RLI, it was too late to add a vessel because you can't add a vessel to a policy that is no longer in existence.

Again, the Court disagrees with RLI. The clause calls for *automatic* coverage not coverage that attaches upon notice. The pertinent question is whether coverage existed when the incident occurred on March 10, 2020, not whether coverage existed when RLI learned about the vessel swap as part of this lawsuit in 2021. The soon as practicable language does not have a specific timeframe to report and the allision occurred just 3 days after the UNCLE JOHN was acquired. The Court finds that the UNCLE JOHN was a covered vessel on the date of the allision.[6]

The Court assumes without deciding that Alexis Marine was an additional insured on March 7, 2020.

But proving coverage is only half the battle for A&T Maritime and Alexis Marine because RLI contends that several policy warranties were violated, in particular the Prompt Notice Warranty, the general notice provision, and the Notice of Loss Warranty, and that RLI was prejudiced as a result.[7] RLI contends that because of these breaches, and in light of the actual prejudice it has sustained because of them, coverage was voided.

---

[6] RLI also raises an argument about the policy's Contractual Liability Extension section. The Court has read this section of the policy several times and does not comprehend RLI's argument as to how this section affects the determination as to whether the UNCLE JOHN was a covered vessel.

[7] The Court notes that the Settlement of Claims section states that "[t]he Assured shall not make any admission of liability, either before or after any occurrence which may result in a claim for which the Assurer may be liable." (Rec. Doc. 126-9 at 19). Although RLI did not raise the issue it would appear that this prohibition was violated.

The Prompt Notice of Claim section is part of the policy's General Conditions and/or Limitations. It states:

> Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give ***prompt notice*** thereof and forward to the Assurer ***as soon as practicable*** after receipt thereof, all communications, processes, pleadings and other legal papers or documents relating to such occurrences.

(Rec. Doc. 126-9 at 19) (emphasis added).

The Notice of Loss section is part of the policy's General Conditions. It states in part:

> Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Company is or may become liable, the Assured will use ***due diligence*** to give ***prompt notice*** thereof and forward to this Company and/or the Agent or Broker that arranged this insurance, ***as soon as practicable*** after receipt thereof, all communications processes, pleading and other legal papers or documents relating to such occurrences.

(Rec. Doc. 126-9 at 25) (emphasis added).

The general notice provision merely reiterates the requirement for *prompt notice* in the event of any accident or occurrence which could give rise to a claim under the policy. (Rec. Doc. 126-9 at 10).

Two things are clear to the Court: All three of the foregoing notice requirements were breached and RLI has established actual prejudice as a result of the breach. Allowing nearly a year to elapse between the allision and RLI receiving notice of the occurrence was not reasonable under the facts and circumstances. A&T Maritime had made other claims under the policy and A&T Maritime knew (and perhaps was the only party that knew) about the allision. Ms. Dampeer's email to Manuel expressly mentions his desire to avoid involving his

10

insurance company. (Rec. Doc. 126-7). The Court finds that A&T Maritime did not provide RLI with prompt notice of the allision as soon as practicable.

As to prejudice, it hardly strains credulity to see that RLI was prejudiced by A&T Maritime's intentional failure to notify RLI about the allision. Putting aside speculation as to what RLI's post-accident investigation of the damage would have presented in terms of defenses to liability, the original property owner was willing to accept $3500 for the property damage. But that settlement was never consummated and apparently the damage to the dock worsened and the damage from the allision became more expensive to repair. The ultimate settlement amount involving the Champagnes is believed to be around $200,000.00. As RLI legitimately points out, had it been notified of the allision when it occurred, it could have adjusted the loss, and potentially settled the entire matter for the $3500 that Ms. Dampeer was willing to accept. The vessel seizure, which was expensive for both the Champagnes (and therefore surely drove up the amount demanded in settlement) and Alexis Marine, could have been avoided. This entire lawsuit and all of the attorney's fees and costs that both A&T Maritime and Alexis Marine now want RLI to pay could have been avoided. It matters not that RLI has been a party to this case since its inception; by the time that the lawsuit was filed the prejudice was already in place. The Court finds that RLI has established actual prejudice as a direct result of A&T Maritime's breach of the policy's notice requirements.

The final step in the Court's analysis is the proper remedy for those breaches. RLI naturally seeks to have the Court declare that all coverage for the allision has been voided due to the breaches. If the policy contained language that either expressly or impliedly required such a draconian result then the Court would not hesitate to enforce

that language. But RLI has not pointed out where the policy language requires that harsh result. And the Court is not clear on which *binding* authority RLI relies upon to have the Court void coverage. A strong argument could be made perhaps that even if coverage was not voided altogether it should be limited to $3500 with no reimbursement for attorney's fees or for any of the expenses that were incurred due to the vessel's arrest. At this time the Court is persuaded that summary judgment should be denied without prejudice as to the appropriate remedy for the breaches that occurred and the prejudice sustained. RLI (or the other parties) may file a new narrower motion for summary judgment on the issue (incorporation of prior briefing by reference will not be allowed) but any such motion(s) must be filed by **October 31, 2022**.

    Accordingly, and for the foregoing reasons;

    **IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 126)** filed by third-party defendant/cross-defendant RLI Insurance Co. is **GRANTED IN PART AND DENIED IN PART** as explained above.

    October 11, 2022

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE